IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiffs,<br><br> vs.<br><br>SONIA HERNANDEZ, FREDDY HERNANDEZ JR.,<br><br>    Defendants. | 4:14CR3114<br><br>**FINDINGS, RECOMMENDATION, AND ORDER** |

  This matter is before the court on Defendants Sonia Hernandez' and Freddy Hernandez, Jr.'s motions to suppress (Filing No. 42 and Filing No. 40, respectively). For the reasons set forth below the motions should be denied.

BACKGROUND

  On June 21, 2014, Nebraska State Patrol Trooper Rob Pelster observed and clocked by radar a Ford Expedition traveling in excess of eighty-four miles per hour in a seventy-five (75) mile per hour zone on Interstate 80 near Seward, Nebraska. At approximately 7:16 a.m., Trooper Pelster initiated a traffic stop of the Expedition. The driver, as identified by her California driver's license, was defendant Sonia Hernandez. The passenger, as identified by his Virginia driver's license, was defendant Freddy Hernandez, Jr., Sonia Hernandez' nephew.

  Trooper Pelster approached the passenger side of the vehicle. He asked the defendants to provide their driver's licenses and asked if the Expedition was a rental. Sonia Hernandez confirmed the Expedition was rented and upon request, provided the rental agreement to Trooper Pelster. The Expedition was rented by Sonia Hernandez and she was listed as the only approved driver on the rental contract. Trooper Pelster explained he had clocked the speed of the vehicle on his radar at between eighty-four

(84) and eighty-eight (88) miles per hour. He further informed Sonia Hernandez that she would receive a citation for speeding. Trooper Pelster then took the licenses and the rental contract and asked Sonia Hernandez to accompany him back to his patrol car.

Once inside the patrol car, Trooper Pelster contacted his dispatcher and requested checks on the defendants' drivers' licenses and criminal histories. While entering the information necessary to issue a citation and awaiting a response from dispatch, Trooper Pelster questioned Sonia Hernandez about the details of her trip. He quickly learned Sonia Hernandez and Freddy Hernandez, Jr. were traveling from a suburb of Los Angeles, California to Buffalo, New York. Sonia Hernandez explained that the defendants planned to return the rental car in Buffalo and proceed by airplane to Virginia – Freddy Hernandez, Jr.'s state of residence and the location of other members of the Hernandez family. Sonia Hernandez then intended to fly back to California. In response to Trooper Pelster's further inquiries, Sonia Hernandez stated that neither she nor defendant Freddy Hernandez, Jr. had family or friends in Buffalo, and she did not know how long they intended to stay in Buffalo or what they intended to do besides check into the first motel they could find.

Trooper Pelster asked Sonia Hernandez to explain why she was driving a rental vehicle to Buffalo, New York, and was then flying to Virginia before flying back to California, particularly since the rental contract reflected a $1,100 cost for the one-way vehicle rental alone. Sonia Hernandez responded that paying the one-way rental cost to Buffalo was more cost effective because round-trip airfare from Los Angeles to Virginia was $1,000 per person. When asked about the dates of travel she stated she did not know when they were going to leave Buffalo or when she would be traveling from Virginia back to Los Angeles; therefore, she had not yet purchased airline tickets for those legs of the journey.

Trooper Pelster returned to the Expedition to ask Freddy Hernandez, Jr. for his social security number to confirm the accuracy of background checks and criminal history. Upon questioning, Freddy Hernandez, Jr. confirmed the route of the defendants' travel, but unlike Sonia Hernandez, Freddy Hernandez, Jr stated they were visiting some of his relatives in Buffalo. But he could not name those relatives or the relative with whom they intended to stay.

Upon returning to the patrol car, Trooper Pelster continued his conversation with Sonia Hernandez while awaiting the criminal background information. Despite her statement to the contrary, the background check revealed Sonia Hernandez had a criminal history. And she was the subject of an open investigation by federal law enforcement.

Trooper Pelster issued a citation to Sonia Hernandez. As she was exiting the patrol car, the trooper asked her if she would consent to answering a few more questions. She agreed, and in response to Trooper Pelster's questioning, she denied having any illegal drugs in the Expedition. The trooper then asked Sonia Hernandez for permission to search the Expedition. She refused consent. Trooper Pelster asked Sonia Hernandez if she was willing to wait while he called for a K-9 unit to arrive at the scene of the traffic stop to conduct a dog sniff of the Expedition. She consented to do so. Upon Trooper Pelster's request, Freddy Hernandez, Jr. also consented to waiting for the canine to arrive and perform a dog sniff.

Sergeant Christopher Pleiss joined Trooper Pelster at the stop. Trooper Pelster updated Sergeant Pleiss on the status of the stop and told him Sonia Hernandez consented to the dog sniff, but the only available K-9 unit was some distance away. Pelster proceeded to the Expedition and, using a flashlight, looked into the passenger side window above the rear quarter panel Through the slit in the quarter panel where the seat belt was housed, he saw a silver material and what he believed to be a portion of a tape

wrapped package—consistent with the packaging commonly used for illegal drugs. He also saw an area where a portion of the casing on the rear quarter panel on the inside of the Expedition appeared to have been pried up or doctored in some way. Based on their experience, the officers believed the void in the rear quarter panel of the vehicle was being used to hide illegal drugs during transport. Trooper Pelster determined probable cause existed to search the vehicle. He and Pleiss conducted the search and found a silver covering along with several packages wrapped in black or red tape located within the vehicle, including in the rear quarter panel area. The officers placed the Hernandez' in custody.

## ANALYSIS

Both Sonia Hernandez and Freddy Hernandez, Jr. seek the suppression of the evidence seized as a result of the search of the Expedition and any statements Defendants made during the traffic stop, and after they were detained and the vehicle was searched. Defendants assert Trooper Pelster did not have a legal basis for stopping the Expedition, detained them in violation of their rights to be free from an unreasonable seizure under the Fourth Amendment, and did not have probable cause to conduct a warrantless search of the Expedition.

1.    Traffic Stop

Defendant Sonia Hernandez first argues Trooper Pelster initiated the traffic stop without reasonable and articulable suspicion of a traffic violation. "It is well established that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." United States v.

Mallari, 334 F.3d 765, 766 (8th Cir. 2003). That is, "[a]n officer is justified in stopping a motorist when the officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law.' " Id. at 766-67 (quoting United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996)).

Trooper Pelster clocked the Expedition traveling in excess of the posted speed limit of seventy-five (75) miles per hour using radar equipment which was calibrated before and after every shift. Pelster advised Sonia Hernandez of the reason for the stop, stating the vehicle was travelling up to 88 miles per hour and informing her that she would be cited for speeding. Based on the credible testimony of Trooper Pelster, probable cause existed to initiate the traffic stop.

    2.    Detention

Defendants argue Trooper Pelster extended the traffic stop longer than was necessary to issue the speeding ticket and therefore the stop was an impermissibly long detention for the purposes of the Fourth Amendment. "A constitutionally permissible traffic stop can become unlawful 'if it is prolonged beyond the time reasonably required to complete' its purpose. United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008) (quoting Illinois v. Caballes, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)). During a traffic stop an officer may complete routine tasks such as requesting the driver's license and the vehicle's registration, reviewing criminal history, and asking questions about the occupants' destination, route, and purpose. See United States v. Riley, 684 F.3d 758, 764 (8th Cir. 2012)(internal citations omitted). "Whether a particular detention is reasonable in length is a fact-intensive question, and there is no per se time limit on all traffic stops. When there are complications in carrying out the traffic-related purposes of the stop, for example, police may reasonably detain a driver for a longer duration than

when a stop is strictly routine." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007).

Additionally, a traffic stop may be extended when the investigating officer, based on the totality of the circumstances, has reasonable suspicion to believe criminal activity unrelated to the stop may be present.

> If an officer develops reasonable suspicion regarding unrelated criminal conduct during the course of a lawful traffic stop, "an officer may broaden his inquiry and satisfy those suspicions" without running afoul of the Fourth Amendment. United States v. Jones, 269 F.3d 919, 926-27 (8th Cir.2001) (quotation omitted).  Reasonable suspicion requires "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Donnelly, 475 F.3d 946, 952 (8th Cir.2007) (quotation omitted); see also Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." United States v. Linkous, 285 F.3d 716, 720 (8th Cir.2002) (quotation omitted).

United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008).

Reasonable suspicion may evolve or increase during the course of the traffic stop "as the circumstances unfold and more suspicious facts are uncovered." Linkous, 285 F.3d at 720.  In determining whether reasonable suspicion exists, officers "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.' United States v. Chartier, 772 F.3d 539, 543-44 (8th Cir. 2014) (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal citations omitted)).

Defendants assert Trooper Pelster did not issue the speeding citation in a timely manner because he intentionally, and impermissibly, prolonged the traffic stop for the express purpose of conducting criminal interdiction. The time between the initial stop and when Sonia Hernandez received the speeding citation and was free to leave was approximately thirty-six (36) minutes. Trooper Pelster admits the stop lasted longer than a routine stop for speeding, in part due to waiting for Defendants' criminal and background information from dispatch. The video of the traffic stop supports Trooper Pelster's testimony.

The defendants may be arguing that a criminal history is unnecessary for a speeding ticket, particularly when awaiting that history excessively prolongs the traffic stop. Whatever merit this argument may have, it does not support a Fourth Amendment violation under the totality of the facts presented in this case. Specifically, the following facts support a finding of reasonable suspicion sufficient to justify prolonging Defendants' detention to investigate:

- Defendants planned to drive a rented car from Los Angeles, California to Buffalo, New York, return the car almost immediately upon arrival in Buffalo, fly from there to Virginia, stay in Virginia for an undetermined amount of time, and then return to Los Angeles.

- Sonia Hernandez could not explain why she was travelling to Buffalo; that is, she said she had no family or friends there and that she just wanted to take a road trip, but could not explain why Defendants picked Buffalo as their destination of choice.

- When asked why she was spending over $1,100 to rent a Ford Expedition for a one-way trip to Buffalo, Sonia Hernandez stated it was more cost effective than flying because roundtrip airfare from California to Virginia was approximately $1,000 per ticket. But she also stated that she had not purchased plane tickets for flying from Buffalo to Virginia or from Virginia back to California.

- Sonia Hernandez stated she did not have any relatives in Buffalo, New York. But Freddy Hernandez, Jr. stated they were traveling to Buffalo to visit relatives. However, he did not know the names of the relatives they planned to visit.

Within minutes after initiating the traffic stop, Trooper Pelster was aware of Sonia Hernandez' implausible statements about their travel plans, her unconvincing reason to travel to Buffalo in a rented vehicle, and Freddy Hernandez, Jr.'s inconsistent response regarding why they were heading to Buffalo and whom they were staying while there. These facts alone provided Trooper Pelster with the requisite reasonable suspicion to prolong the traffic stop for further investigation. See United States v. Bracamontes, 614 F.3d 813, 816 (8th Cir. 2010) (finding reasonable suspicion where a driver's statement about his travel plans were internally inconsistent and contradicted his passenger's account to the reason for travel)(collecting cases); United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004)(holding conflicting stories provided by vehicle occupants may justify expanding a vehicle stop and detaining the occupants to investigate possible criminal activity). Additionally, Trooper Pelster, who has received significant training in criminal interdiction, identified the Hernandez' travel as originating in a drug source state, with the rental car destination being a drug distribution center. While this fact, in and of itself, is not particularly suspicious, when combined with the irrational travel plans, the Defendants' inconsistent statements about those plans, Sonia Hernandez' criminal history report (which was inconsistent with her self-reported criminal history), and information indicating Sonia Hernandez was the subject of an ongoing federal investigation, Trooper Pelster had a reasonable and articulable suspicion to believe Defendants were engaged in criminal activity. As such, he was permitted to extend the stop and detain Defendants for a reasonable period of time while he investigated those suspicions. See United States v. White, 42 F.3d 457, 460 (8th Cir. 1994)(reasonable suspicion was supported when origin of travel was a known source city for drugs to a use or distribution city); See also United States v. Coleman, 603 F.3d 496, 500 (8th Cir. 2010) (travel from a drug source state is one factor contributing to a finding of reasonable suspicion).

Once Trooper Pelster returned the citation and other paperwork, Trooper Pelster immediately asked Sonia Hernandez for consent to the search the Expedition. Sonia Hernandez declined, but she did agree to wait for a K-9 unit to arrive at the scene for a canine sniff of the Expedition. Freddy Hernandez, Jr. also consented to wait for the canine's arrival. From the time when Defendants consented to a canine sniff until they were arrested, Defendants detention was consensual.[1] And prior to Defendants' consent to the canine sniff, Trooper Pelster had requisite reasonable suspicion to prolong the stop. The defendants were not detained in violation of their Fourth Amendment rights.

3. The Vehicle Search[2]

"The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. . . Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006).

"As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). "Probable cause exists 'when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Mayo, 627 F.3d 709, 713(8th Cir. 2010)(quoting Fladten, 230 F.3d at 1085).

Sonia Hernandez argues Trooper Pelster and Sergeant Pleiss lacked probable cause to conduct a warrantless search of the Expedition. The Government argues

---

[1] Defendants do not challenge the consensual nature of the encounter once Sonia Hernandez had her license, vehicle information, and citation.

[2] Freddy Hernandez, Jr. does not contest the propriety of the vehicle search and likely lacks standing to do so. See United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004).

Trooper Pelster's reasonable suspicion evolved into probable cause when Trooper Pelster's observed what he believed to be drug packaging in the vehicle's rear quarter panel, and marks or exposed clips indicating the plastic cover for that area had been pried up.

The video recording of the traffic stop reveals a candid and spontaneous conversation between Trooper Pelster and Sergeant Pleiss while they awaited the arrival of the K-9 unit. Based on this recording, and the officers' credible testimony, Trooper Pelster looked into the window above the rear quarter panel and saw what he believed to be packaging material consistent with transporting illegal drugs, and it appeared the cover over that quarter panel area had been pried up and reseated improperly or incompletely over the opening. See Ex. 2, photograph IMG_2865. Sergeant Pleiss verified Trooper Pelster's observations. The officers cancelled the canine sniff, concluding their plain view of apparent drug packaging and pry marks—particularly in the context of Defendants' implausible and inconsistent explanation of their travel plans, Sonia Hernandez' untruthful answer about her criminal history, and the ongoing investigation of Sonia Hernandez—supported a finding of probable cause.

The court agrees. The officers had probable cause to believe the vehicle was being used to transport illegal drugs and to conduct a warrantless search of the Expedition for illegal narcotics. The vehicle search did not violate the Fourth Amendment. See Cortez-Palomino, 438 F.3d at 913 (upholding search where law enforcement officers, relying upon their experience, observed three large packages wrapped in green cellophane and the presence of drug masking agents); United States v. Barnes, 374 F.3d

601, 604-05 (8th Cir. 2004)(probable cause for warrantless search found where officer recognized packages hidden inside door panels as possible contraband).[3]

Accordingly,

IT HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, that Sonia Hernandez' Motion to Suppress (Filing No. 42) and Freddy Hernandez', Jr's Motion to Suppress (Filing No. 40) should be denied.

The defendants are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on June 15, 2015, or as soon thereafter as the case may be called, for a duration of five (5) trial days. Jury selection will be held at the commencement of trial.

Dated this 11th day of May, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

[3] Both defendants seek to suppress the seized evidence and their subsequent statements as "fruit of the poisonous tree." Having found the stop, detention and search to be lawful, the court need not address Defendants' argument on that topic.

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.